IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| WILLIE FRAZIER, | ) | C/A No. 4:09-302-JFA-TER |
|---|---|---|
| Petitioner, | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| WARDEN STEVENS, | ) | |
| Respondent. | ) | |

Petitioner, Willie Frazier, ("Petitioner/Frazier) is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on February 11, 2009. Petitioner filed a motion for summary judgment on May 22, 2009, alleging default. Respondent filed a response in opposition. Respondent filed a motion for summary judgment on July 10, 2009, along with a return and supporting memorandum. The undersigned issued an order filed July 13, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to file a response. Petitioner filed a response on July 24, 2009.

It is recommended that this action be dismissed as barred by the statute of limitations and there are no grounds for equitable tolling. However, the lengthy procedural history is set forth for reference purposes.

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

# I. PROCEDURAL HISTORY

The procedural history as set forth by the Respondent in his memorandum has not been seriously disputed by the Petitioner. Therefore, the undersigned will set out the undisputed procedural history as set forth by the Respondent, in part.

Petitioner is currently incarcerated in the Lee Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Aiken County. Petitioner was indicted by the Grand Jury for the Court of General Sessions of Aiken County for armed robbery, first degree burglary, criminal conspiracy, and possession of a weapon during the commission of a violent crime. Petitioner was represented by I.S. Levy Johnson, Esquire. His case proceeded to trial before the Honorable William P. Keesley, and a jury on June 22, 1998. Petitioner was convicted as charged. Pursuant to S.C. Code Ann. Section 17-25-45 (Supp. 1998), Judge Keesley sentenced Petitioner to life imprisonment without the possibility of parole.

Petitioner timely filed and served a Notice of Intent to Appeal. Petitioner was represented in this appeal by Melissa J. Reed Kimbrough, Esquire. Petitioner raised two issues on appeal:

(1) Whether appellant's life without parole sentence pursuant to S.C. Code Section 17-23-45 (Supp. 1998) violates the South Carolina prohibition against ex post facto application of laws pursuant to Article 1, Section 4 of the South Carolina Constitution?;

(2) Whether appellant's life without parole sentence pursuant to S.C. Code Section 17-25-45 (Supp. 1998) violates the South Carolina prohibition against cruel and unusual punishments pursuant to Article 1, Section 15 of the South Carolina Constitution?

The State filed a responsive brief. On August 23, 2000, the South Carolina Supreme Court affirmed Petitioner's conviction and sentence in a memorandum opinion dismissing the appeal pursuant to Rule 220(b) SCACR, and the following authorities: Issue 1: <u>Sullivan v. State</u>, 331 S.C.

479, 504 S.E.2d (1998); Issue 2: Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680 (1991); State v. Washington, 338 S.C. 392, 526 S.E.2d 709 (2000); State v. Wilson, 306 S.C. 498, 413 S.E.2d 19 (1992). (State v. Frazier, 2000-Mo-108 (Filed August 23, 2000)). The Remittitur was issued September 12, 2000.

**The First PCR Action**

Petitioner subsequently filed an application for PCR on January 5, 2001. (2001-CP-02-16) (See Appendix). The State filed a Return. In his application, Petitioner initially argued that he was being held in custody unlawfully for several reasons, but at his hearing he waived all grounds except for his claim that he was being held in custody unlawfully due to ineffective assistance of appellate counsel. (See Appendix, page 4 of the PCR transcript).

An evidentiary hearing was held on July 23, 2001. After the merits hearing, the Honorable Rodney A. Peeples denied and dismissed the PCR application by written Order on January 23, 2002. In the Order, Judge Peeples denied the sole ground Petitioner raised at the PCR hearing, that Petitioner's appellate counsel on direct appeal was ineffective in failing to raise an issue that the trial judge should have granted a mistrial when a newspaper was discovered in the jury room.

**The Second PCR Application**

On June 17, 2002, Petitioner filed another PCR Application with the Clerk's Office in Aiken. This action was given the case number 02-CP-02-730. The State filed a Return to this Application. On November 20, 2002, Petitioner through his PCR counsel voluntarily dismissed this PCR action. The Notice of Dismissal was filed in the Aiken's Clerk's Office on January 6, 2003. (See attached).

3

**The Appeal from the Denial of Post-Conviction Relief** (01-CP-02-16)

Petitioner then filed a Petition for Writ of Certiorari from Judge Peeples' Order in the first PCR denying and dismissing his sole ground of ineffective assistance of appellate counsel. Petitioner raised only one issue to the South Carolina Supreme Court from the denial of his original PCR application: Whether appellate counsel was ineffective for failure to raise on appeal the issue (preserved by trial counsel) that a mistrial should have been ordered because the trial judge conducted a Wasson investigation after the jury had been charged when a newspaper was discovered in the jury room? (See Petition for Writ of Certiorari, the Honorable Rodney Peeples, page 3). The State filed a responsive brief. The Supreme Court of South Carolina denied the Petition by letter Order dated July 8, 2004.[2] The Remittitur was sent down on July 26, 2004.

**The Third PCR Action**

Petitioner filed a third application for post-conviction relief on August 12, 2004 (04-CP-02-1052), and amended several times. Respondent made its return on June 9, 2005, and amended return and motion to dismiss after the filing of Petitioner's amended applications and "Supplemental Memorandum of Law." In original application (04-CP-02-1052), Petitioner alleged only one ground: "The Circuit Court Lacked Subject Matter Jurisdiction." (See original application attached). Petitioner filed an Amended Application in December of 2004 alleging similar grounds. Petitioner filed another Amended Application, titled "Amendment and Supplementation to Post Conviction

---

[2] Respondent states that the Supreme Court's letter order and the Remittitur contain the wrong civil file number. (2001-CP-02-1726). The actual or correct case number was 2001-CP-02-16.

Application," Petitioner raised the following grounds:

  1. Lack of Subject Matter Jurisdiction

  2. Lack of Jurisdiction Due to the Indictments Not Being Filed with the Clerk of Court

  3. Lack of Jurisdiction by the Appellate Court

  4. Petitioner did not voluntarily and knowingly waive his claims at the prior PCR

  5. Ineffective assistance of counsel in failing to move to quash Petitioner's indictments.

The Honorable Doyett Early, Circuit Court Judge ("the 3rd PCR Court) was assigned to hear the matter. In a document entitled "Supplemental Memorandum of Law in Support of Application for Post-Conviction Relief," filed in September 2007, Petitioner made numerous allegations. (See Supplemental Memorandum of Law).

**The Conditional Order of Dismissal**

After the filing of the State's Amended Return, the 3rd PCR Court entered a Conditional Order of Dismissal. In the Order, the 3rd PCR Court noted the records before the Court reflected that Petitioner was incarcerated with the South Carolina Department of Corrections, and Petitioner was indicted at the November 1997 term of the Aiken County Grand Jury for Burglary, First Degree (97-GS-02-1727), Armed Robbery (97-GS-02-1743), Possession of a Weapon during the Commission of a Violent Crime (97-GS-02-1742), and Criminal Conspiracy (97-GS-02-1726). I.S. Leevy Johnson, Esquire, represented Petitioner on the charges. The records also indicated that on June 27, 1998, Petitioner proceeded to trial and was found guilty as charged. He was sentenced by the Honorable William P. Keesley to a term of life imprisonment without the possibility of parole pursuant to S.C. Code Ann. 17-25-45 on the Armed Robbery and Burglary, First Degree charges,

and a term of five (5) years imprisonment for both the Possession of a Weapon during the Commission of a Violent Crime and Criminal Conspiracy charges.

The records indicated Petitioner subsequently filed an application for post-conviction relief (PCR) on January 5, 2001. In his application, Petitioner initially argued that he was being held in custody unlawfully for several reasons, but at his hearing he waived all grounds except for his claim that he was being held in custody unlawfully due to ineffective assistance of appellate counsel. An evidentiary hearing was held on July 23, 2001. Petitioner was present and was represented by William Key, Jr., Esquire. The Honorable Rodney A. Peeples denied and dismissed the PCR application by written Order on January 23, 2002. Petitioner then filed a Petition for Writ of Certiorari. The Supreme Court of South Carolina denied the Petition by written Order dated July 8, 2004. The Remittitur was sent down on July 26, 2004.

The 3rd PCR Court also noted that before it were the records of the Aiken County Clerk of Court regarding the subject conviction; Petitioner's records from the South Carolina Department of Corrections; Petitioner's appellate records and Petitioner's prior PCR records. The 3rd PCR Court noted that in his subsequent Application, Petitioner alleged that he was being held in custody unlawfully for the following reasons:

1. Trial counsel was ineffective for failing to motion the court for a suppression hearing on the DNA sample.
2. Applicant (Petitioner) did not voluntarily waive grounds at his prior PCR hearing.
3. Lack of subject matter jurisdiction.

The 3rd PCR Court found that the current application for post-conviction relief must be summarily dismissed because it was successive to his prior application for post-conviction relief.

The 3rd PCR Court found that the current allegations were or could have been raised in the prior proceedings based on Petitioner's prior application for post-conviction relief and thus the current application was successive and barred under S.C. Code Ann. § 17-27-90. The Court also found and concluded Petitioner had failed to establish sufficient reason why he could not have raised his current allegations in his previous application for post-conviction relief; therefore, he had failed to meet the burden imposed upon him. *Citing* Land v. State, 274 S.C. 243, 262 S.E.2d 735 (l980); Aice v. State, 409 S.E.2d 392 (l99l); Arnold v. State/Plath v. State, 420 S.E.2d 834 (l992).

The 3rd PCR Court found, further, that this Application for Post-Conviction Relief should be summarily dismissed for failure to comply with the filing procedures of the Uniform Post-Conviction Procedure Act. S.C. Code Ann. § 17-27-10 to –160 (2003). The Court noted Petitioner was convicted of the offenses he challenges in this Application on June 27, 1998 and his appeal was denied on August 23, 2000. Petitioner was therefore required to file his application before August 23, 2001. The 3rd PCR Court found this Application (the 3rd Application) was filed on August 12, 2004, which was well beyond the time the statutory filing period had expired.

Pursuant to S.C. Code Ann. § 17-27-70(b), the 3rd PCR Court notified Petitioner that the Court intended to dismiss this Application with prejudice unless Petitioner provided specific reasons, factual or legal, why the Application should not be dismissed in its entirety. Petitioner was granted twenty (20) days from the date of service of this Order upon him to show why this Order should not become final. It was so ordered on February 19, 2008. Petitioner was served with the Conditional Order of Dismissal on March 11, 2008.

Subsequent to the issuance of the Conditional Order of Dismissal, Petitioner filed a Supplemental Application for PCR. In this supplemental application, Petitioner alleged:

1. Actual innocence

2. Fundamental Miscarriage of Justice

3. Denial of Counsel

4. Conspiracy to deny due process

Petitioner again referred to the letter from S.L.E.D. as showing actual innocence and a basis for an after-discovered evidence claim.

On March 6, 2008 and/or March 12, 2008, Petitioner filed a document captioned "Objection to Respondent's Conditional Order of Dismissal." (See attached). Petitioner argued that his 3rd Application should not be dismissed due to:

1. Actual innocence.

2. Fundamental miscarriage of justice.

3. Denial of counsel.

4. Conspiracy to deny due process.

In this document, Petitioner asserted or attempted to assert a claim of after discovered evidence related to the letter he received from S.L.E.D in May of 2007.[3]

---

[3] The letter Petitioner referred to was in response to a Freedom of Information Act request from Petitioner. The letter states that "A thorough search of our database using the information provided in your letter dated May 9, 2007, revealed nothing found under the name of Willie Frazier. We advise you to contact the arresting agency for any information they may have concerning this matter." Petitioner contends this proves SLED DNA expert Bogan committed perjury at his trial when he testified he compared Petitioner's DNA to the DNA at the crime scene. Petitioner has not provided a copy of his letter to SLED and the information he provided to them in his FOIA request. (A copy of a letter he sent to the Clerk's Office and forwarded to the Solicitor appears to have been attached to his Supplemental Memorandum filed in November 2007). Furthermore, the DNA test results from this case are listed in SLED's computer under the victim's name, Nancy Bonnette. (See Affidavit of Kenneth Bogan). The SLED Lab Number is L97-7168. A copy of the SLED DNA lab report is attached to this return. Agent Bogan testified extensively about his DNA comparison in this case. (See Appendix, the Honorable Rodney

**The Final Order of Dismissal**

The 3rd PCR Court reviewed Petitioner's response to the State's motion to dismiss in its entirety, in conjunction with the original pleadings, and found that a sufficient reason had not been shown why the Conditional Order of Dismissal should not become final. It was therefore ordered that, for the reasons set forth in the Court's Conditional Order of Dismissal, the Application for PCR (3rd Application) was hereby denied and dismissed with prejudice. The Court advised Petitioner he must file and serve a Notice of Intent to Appeal within 30 days of the service of this Order to secure appellate review, referencing Rule 203 SCACR. Petitioner's attention was also directed to Rule 227, SCACR, for procedures following the filing and service of the notice of appeal. The Final Order was issued March 27, 2008. Petitioner filed a Rule 59 Motion to Amend the Order. The State filed a Return. The Rule 59 Motion was denied. (See attached Order)

**The Writ of Mandamus**

According to the records in the file, between the issuing of the Conditional Order of Dismissal on February 19, 2008, and the issuing of the Final Order of Dismissal on March 27, 2008, on February 27, 2008, Petitioner filed a "Writ of Mandamus" in the South Carolina Supreme Court. (According to Petitioner's verification it was mailed to Respondent on February 21, 2008, See attached). Petitioner also attached a Supplement to his 2nd PCR Application or Supplement to his Memorandum of Law. The Writ of Mandamus asked the Supreme Court to appoint qualified counsel to conduct a D.N.A. oriented post-conviction relief attack or issue a mandamus ordering the Clerk of Court for Aiken County to appoint counsel for Petitioner in his 3rd PCR action. In this filing with

---

Peeples, testimony of Kenneth Bogan). (See also attached Affidavit of Kenneth Bogan).

the Supreme Court, Petitioner referred to his claim of after-discovered evidence based on the letter he received from SLED on May 29, 2007, in response to an F.O.I.A. request. The State filed a Return to the Petition for Writ of Mandamus on March 6, 2008.

**The Appeal from the Dismissal of the 3rd PCR Application**

Petitioner appealed Judge Early's dismissal of his 3rd PCR Application. On November 13, 2008, the South Carolina Supreme Court dismissed Petitioner's appeal finding the explanation required by Rule 227( c), SCACR failed to show that there was an arguable basis for asserting that the determination by the lower court was improper. Accordingly, the appeal was dismissed. Petitioner filed a Petition for Rehearing. The Petition for Rehearing was denied December 3, 2008. This habeas petition followed.

## II. HABEAS ALLEGATIONS

Petitioner raises the following allegations in his *pro se* Petition for Writ of Habeas Corpus, quoted verbatim:

Ground One: Involuntary Waiver of Ineffective Assistance of Counsel

Supporting facts: Petitioner's first P.C.R. was held on July 23, 2001. The Petitioner was present at the hearing. William Key, Jr., Esquired represented Petitioner at the hearing who withdrew Petitioner's claims of ineffective assistance of counsel without Petitioner's prior knowledge or consent. The PCR transcript is void regarding Petitioner's knowingly and voluntarily waiving the claims of ineffective assistance of counsel on the record. The first PCR judge failed to ascertain the voluntariness of the withdrawal from the Petitioner prior to dismissing his application with prejudice. Petitioner's claims were waived from the record without a full record to confirm the waiver was knowing and voluntarily. Petitioner

also alleged as grounds for relief in his initial July 23, 2001 PCR evidentiary hearing that the trial court judge refused to instruct the jury on reasonable doubt as was requested by Petitioner's trial court attorney. These essential claims along with the ineffective assistance of counsel claims was never adjudicated after being presented in Petitioner's pleadings. The record does not reflect Petitioner abandoned these claims knowingly and voluntarily at Petitioner's first PCR in July 23, 2001. Petitioner then filed a second PCR to have the issues that was abandon presented on a second application.

Ground Two: Trial counsel was ineffective for failing to motion the court for a suppression hearing on the DNA; No D.N.A. chain of custody.

Supporting Facts: There was no DNA chain of custody established at the time evidence was admitted into the trial. Counsel for Petitioner was ineffective for failing to move for a suppression of the DNA; the blood (DNA) that was extracted from Petitioner was never established through a proper chain of custody from the time it was taken through bodily intrusion until tested at SLED laboratory. There was no sworn affidavit signed by each person having custody of evidence. Prosecution failed to disclose DNA sample to Petitioner defense for independent sampling, prosecution for the state withheld evidence concerning samples. Petitioner never had a independent expert for his defense to retest the State's expert witness results.

Ground Three: Improper search and seizure/Ineffective assistance of counsel.

Supporting Facts: There was no DNA chain of custody established at the time evidence was admitted into trial. Counsel for Petitioner was ineffective for failing to move for a suppression of the DNA evidence. The blood (DNA) that was taken from Petitioner was never established through a proper chain of custody from the time it was taken through bodily intrusion until tested. There was no search warrant allowing the state to acquire blood from Petitioner through body intrusion.

Ground Four: Actual innocence/Newly discovered evidence.

Supporting facts: SLED, South Carolina Law Enforcement Division, documentation from the Freedom of Information Database Act, stating Petitioner is not within the database for record keeping. The DNA evidence in Petitioner's case is not within forensic records to support DNA expert testimony at the Petitioner's trial, that testified Petitioner's DNA matched 1 in

> 37 billion from the black population nor the statistics 1 in 62 million for the black population as stated by forensic examiner at trial. At Petitioner's trial, a substantial portion of the State's case consisted of the testimony of forensic examiner Kenneth Bogan, the prosecuting forensic examiner. The record clearly demonstrates that Mr. Bogan gave contradictive testimony concerning the method of reaching a DNA conclusion. During direct examination by the State, Mr. Bogan testified as to the importance of blood typing, Tr. 409 line 14-25), establishes that DNA is responsible for determining a person's A,B,O blood type and how the test is established on a comparison of the sample taken at the crime scene. During cross-examination, Mr. Bogan made the statement that he did not know Petitioner's blood type because no ABO blood typing test was performed on Petitioner Tr. 435 line (? 6). Petitioner wrote SLED for the test results from the State database which revealed Petitioner is not within the data base under the freedom of information act at the SLED department.

(Petition).

### III. SUMMARY JUDGMENT

On July 10, 2009, the Respondent filed a return and memorandum of law in support of his motion for summary judgment. Petitioner filed a motion for summary judgment on May 22, 2009.[4]

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services,

---

[4] Within his motion for summary judgment, Petitioner asserts that Respondent is in default. However, Respondent filed timely motions for extensions of time to file a response which were granted. Therefore, Respondent is not in default. (See Doc. #14, #17, #22). Further, Respondent filed a motion for extension of time to respond to Petitioner's motion for summary judgment out of time. (See Doc.#19). This motion was granted on June 12, 2009. (Doc.#20).

901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

## IV. STANDARD OF REVIEW

Since Frazier filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law. See O'Brien v. DuBois, 145 F.3d 16 (1st Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review."). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the Petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1). Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts.

## V. DISCUSSION AS TO STATUTE OF LIMITATIONS

The Respondent asserts that the Petitioner's claims must be dismissed as untimely.

Specifically, Respondent asserts that the Petitioner's federal habeas petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA. (Respondent's Memorandum).

The applicable law is as follows: The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions.[5] Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the <u>latest</u> of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered

---

[5] Prior to this amendment there was no statute of limitations. Habeas Rule 9(a) allowed dismissal only where the state could show it had been prejudiced by a delay in filing. <u>Duarte v. Hershberger</u>, 947 F. Supp. 146, 148, n.2 (D.N.J. 1996).

> through the exercise of due diligence.
>
> (2) The time during which a "properly filed" application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. (Emphasis added).

As stated under the procedural history, Petitioner filed a direct appeal which the South Carolina Supreme Court denied on August 23, 2000. The conviction became final when the remittitur was entered on September 12, 2000. Petitioner would have had ninety (90) days to petition the United States Supreme Court for certiorari. Therefore, the limitations period began to run on December 13, 2000. Petitioner filed his first PCR application on January 5, 2001. Twenty-three (23) days of non-tolled time passed between the conclusion of direct review and the filing of the PCR application. The period of limitations for filing his federal habeas corpus action was tolled during the pendency of the PCR. The South Carolina Supreme Court denied the petition by letter order on July 8, 2004, and the Remittitur was issued on July 26, 2004. Petitioner filed a 2nd PCR application which was voluntarily dismissed. Petitioner filed a third PCR application on August 12, 2004, which was denied for several reasons including that it was successive to his prior application for PCR, and it was barred by the statute of limitations as it was outside the statutory filing period. As the 2nd PCR was voluntarily dismissed and the 3rd PCR was not properly filed under South Carolina Law, these times did not toll the statute of limitations. Petitioner filed this habeas petition on February 11, 2009, with a <u>Houston v. Lack</u>, <u>supra,</u> delivery date of February 2, 2009.[6] However, even using the date of February 2, 2009, the time is outside the limitations period.[7]

---

[6] The date the complaint was signed.

[7] The PCR concluded on July 26, 2004, and petitioner did not file this habeas petition until February 2, 2009. As stated in this report and recommendation, the 2nd PCR was voluntarily

16

In the case of Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000), the Fourth Circuit aggregated time periods to conclude that a federal habeas petition was time barred under 28 U.S.C. § 2244(d). In Harris, the Fourth Circuit stated:

> Thus, for Harris, the one-year limitation period imposed by §2244(d) commenced on April 24, 1996. Ten-and-one-half months later, on March 12, 1997, Harris filed his petition for state post-conviction review, which suspended the running of the one-year limitation period. This petition remained "pending" in state courts until January 7, 1998, when the Maryland Court of Appeals denied Harris' application for leave to appeal the denial of his petition. At this point, the clock began running again on the one-year limitation period, expiring one-and-one-half months later, in February 1998. Harris did not file his federal habeas petition until July 22, 1998, six months after his one-year period had expired. Therefore, the petition was time-barred under 28 U.S.C. § 2244(d).

Harris, 209 F.3d at 327.

Petitioner has not presented evidence to warrant equitable tolling. In the case of Rouse v. Lee, 339 F.3d 238 (4th Cir. 2003), the Fourth Circuit held the following:

> Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases ... and to further the principles of comity, finality, and federalism." *Woodford v. Garceau,* --- U.S. ----, 123 S.Ct. 1398, 1401, 155 L.Ed.2d 363 (2003) (internal citations and quotation marks omitted). Nevertheless, we have held that the AEDPA statute of limitations is subject to equitable tolling. *Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir.2000). As we held in *Harris,* however, rarely will circumstances warrant equitable tolling:
>
>> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy

---

dismissed and the 3rd PCR was not properly filed. Additionally, the writ for Mandamas did not toll the statute as it was not filed until February 27, 2008, long after the limitations period had expired.

> of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.
>
> Id. Principles of equitable tolling do not extend to garden variety claims of excusable neglect. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (equitable tolling did not apply where petitioner's lawyer was absent from the office when the EEOC notice was received, and petitioner filed within 30 days of the date he personally received notice). Equitable tolling "is appropriate when, but only when, 'extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit.' " *Spencer v. Sutton,* 239 F.3d 626, 630 (4th Cir.2001) (quoting *Harris,* 209 F.3d at 330). Accordingly, under our existing "extraordinary circumstances" test, Rouse is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time.
>
> The district court held that although the 1-year AEDPA limitations period is subject to equitable tolling, a "mistake of counsel does not serve as a ground for equitable tolling" as a matter of law. (J.A. at 328.) The court held that the circumstance that prevented Rouse from filing on time, his former counsel's "slight miscalculation by relying on Fed.R.Civ.P. 6(e)," was not an extraordinary circumstance beyond Rouse's control, and thus, that equitable tolling did not apply. (J.A. at 327-31.) The district court also found that Rouse's health during the limitations period did not warrant equitable tolling because he was not in "any way incompetent for a substantial part of the [limitations period]." (J.A. at 331.)

Id. at 246-247.

Based on the fact that Petitioner has not shown any extraordinary circumstances to warrant equitable tolling, the petition is barred by the statute of limitations.

## VI. CONCLUSION

As set out above, a review of the record indicates that the Petitioner's federal habeas corpus

18

petition should be dismissed as it is barred by the statute of limitations. It is, therefore,

RECOMMENDED that Respondent's motion for summary judgment (document #24) be GRANTED, and the petition be dismissed without an evidentiary hearing.

IT IS FURTHER RECOMMENDED that Petitioner's motion for summary judgment (doc.#16) be denied.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

October 21, 2009
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**